UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
at COVINGTON

Civil Action No. 13-190-HRW

LEO BUSTILLOS,                                                                                                     PLAINTIFF,

v.                     **MEMORANDUM OPINION AND ORDER**

CAROLYN COLVIN,
COMMISSIONER OF SOCIAL SECURITY,                     DEFENDANT.

Plaintiff has brought this action pursuant to 42 U.S.C. §405(g) to challenge a final decision of the Defendant denying Plaintiff's application for disability insurance benefits. The Court having reviewed the record in this case and the dispositive motions filed by the parties, and being otherwise sufficiently advised, for the reasons set forth herein, finds that the decision of the Administrative Law Judge is supported by substantial evidence and should be affirmed.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff filed his current application for disability insurance benefits on February 23, 2010, alleging disability beginning on November 16, 2007, due to bipolar disorder, anxiety, panic attacks, depression and periods of psychosis (Tr. 250). This application was denied initially and on reconsideration. Thereafter, upon request by Plaintiff, an administrative hearing was conducted by Administrative Law Judge Dwight Wilkerson (hereinafter "ALJ"), wherein Plaintiff, accompanied by counsel, testified. At the hearing, Micha A. Doud, a vocational expert (hereinafter "VE"), also testified.

At the hearing, pursuant to 20 C.F.R. § 416.920, the ALJ performed the following five-step sequential analysis in order to determine whether the Plaintiff was disabled:

Step 1: If the claimant is performing substantial gainful work, he is not disabled.

Step 2: If the claimant is not performing substantial gainful work, his impairment(s) must be severe before he can be found to be disabled based upon the requirements in 20 C.F.R. § 416.920(b).

Step 3: If the claimant is not performing substantial gainful work and has a severe impairment (or impairments) that has lasted or is expected to last for a continuous period of at least twelve months, and his impairments (or impairments) meets or medically equals a listed impairment contained in Appendix 1, Subpart P, Regulation No. 4, the claimant is disabled without further inquiry.

Step 4: If the claimant's impairment (or impairments) does not prevent him from doing his past relevant work, he is not disabled.

Step 5: Even if the claimant's impairment or impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates his residual functional capacity and vocational factors, he is not disabled.

The ALJ issued a decision finding that Plaintiff was not disabled (Tr. 16-24). Plaintiff was 55 years old at the time of the hearing decision. He has a high school education as well as a technical degree. His past relevant work experience consists of work as a warehouse worker, forklift operator, repair technician for electronics, HVAC technician, machine tender, picture framer, and field engineer .

At Step 1, the ALJ found Plaintiff had engaged in substantial gainful activity from January 2008 through January 2009 (Tr. 18). For the remaining period(s), the ALJ proceeded with the evaluation process and found at Step 2 that Plaintiff had severe impairments of a mood disorder, anxiety disorder, personality disorder, impulse control disorder, and polysubstance dependence (Tr. 19). At Step 3, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment (Tr. 19). In doing, he specifically considering Listings 12.04, 12.06, 12.08 and 12.09 (Tr. 19-21). The ALJ then found Plaintiff had the residual functional capacity

2

(RFC) to perform a full range of work at all exertional levels, but was limited to simple, unskilled work in a low stress environment without strict production quotas, frequent changes, or fast-paced work; should not have contact with the general public; may have occasional, superficial contact with others; and would be off task ten percent of the time (Tr. 21-22). At Step 4, the ALJ found Plaintiff could not perform his past relevant work (Tr. 40). Proceeding to the 5th and final step, the ALJ found Plaintiff could perform other work as identified by the vocational expert (VE) and, therefore, was not disabled (Tr. 41-42, 80-81).

The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the final decision of the Commissioner. Plaintiff thereafter filed this civil action seeking a reversal of the Commissioner's decision. Both parties have filed Motions for Summary Judgment [Docket Nos. 10 and 11] and this matter is ripe for decision.

## II. ANALYSIS

### A.  Standard of Review

The essential issue on appeal to this Court is whether the ALJ's decision is supported by substantial evidence. "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). If the Commissioner's decision is supported by substantial evidence, the reviewing Court must affirm. *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). "The court may not try the case *de novo* nor resolve conflicts in evidence, nor decide questions of credibility." *Bradley v. Secretary of Health and Human Services*, 862 F.2d 1224, 1228 (6th Cir. 1988).

Finally, this Court must defer to the Commissioner's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

B. **Plaintiff's Contentions on Appeal**

Plaintiff contends that the ALJ's finding of no disability is erroneous because: (1) the ALJ erred at Step 3 in finding that Plaintiff did not satisfy the requirements of Listing 12.04 and (2) the ALJ did not properly weigh the medical evidence.

C. **Analysis of Contentions on Appeal**

Plaintiff's first claim of error is that the ALJ erred at Step 3 in finding that Plaintiff did not satisfy the requirements of Listing 12.04.

The Sixth Circuit Court of Appeals stated in *Her v. Commissioner of Social Security,* 203 F.3d 388, 391 (6th Cir. 1999), "the burden of proof lies with the claimant at steps one through four of the [sequential disability benefits analysis]," including proving presumptive disability by meeting or exceeding a Medical Listing at step three. Thus, Plaintiff "bears the burden of proof at Step Three to demonstrate that he has or equals an impairment listed in 20 C.F.R. part 404, subpart P, appendix 1." *Arnold v. Commissioner of Social Security,* 238 F.3d 419, 2000 WL 1909386, *2 (6th Cir. 2000 (Ky)), *citing Burgess v. Secretary of Health and Human Services,* 964 F.2d 524, 528 (6th Cir. 1992). If the Plaintiff "can show an impairment is listed in Appendix 1 ("the listings"), or is equal to a listed impairment, the ALJ must find the claimant disabled." *Buress v. Secretary of Health and Human Services,* 835 F.2d 139, 140 (6th Cir. 1987).

"The listing of impairments 'provides descriptions of disabling conditions and the

4

correction

elements necessary to meet the definition of disabled for each impairment." *Arnold*, at **2, quoting *Maloney v. Commissioner*, 211 F.3d 1269, 2000 WL 420700 (6th Cir. 2000). In order for the Plaintiff "to qualify as disabled under a listed impairment, the claimant must meet all the requirements specified in the Listing." *Id*. This must be done by presenting specific medical findings that satisfy the particular Listing. *Sullivan v. Zebley*, 493 U.S. 521, 530-532, (1990). An impairment that manifests only some of the criteria in a particular Listing, "no matter how severely, does not qualify." *Sullivan*, at 530.

Listing 12.04 provides:

> *Affective Disorders*: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied . . . .
> A. Medically documented persistence, either continuous or intermittent, of one of the following:
> 1. Depressive syndrome characterized by at least four of the following:
> a. Anhedonia or pervasive loss of interest in almost all activities; or
> b. Appetite disturbance with change in weight; or
> c. Sleep disturbance; or
> d. Psychomotor agitation or retardation; or
> e. Decreased energy; or
> f. Feelings of guilt or worthlessness; or
> g. Difficulty concentrating or thinking; or
> h. Thoughts of suicide; or
> I. Hallucinations, delusions or paranoid thinking; or
> 2. Manic syndrome characterized by at least three of the following:
> a. Hyperactivity; or
> b. Pressure of speech; or
> c. Flight of ideas; or
> d. Inflated self-esteem; or
> e. Decreased need for sleep; or
> f. Easy distractability; or

g. Involvement in activities that have a high probability of painful consequences which are not recognized; or
h. Hallucinations, delusions or paranoid thinking; or
3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);
AND
B. Resulting in at least two of the following:
1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence or pace; or
4. Repeated episodes of decompensation, each of extended duration;
OR
C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medications or psychological support, and one of the following:
1. Repeated episodes of decompensation, each of extended duration; or
2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Ch. III, Pt. 404, Subpt. P. App. 1, 12.04

In evaluating Plaintiff's mental functioning, the ALJ discussed in detail the various subparts of the subject listing and provided detailed explanations as to his analysis of each criteria. In doing so, the ALJ referred to the reports of various medical sources. These records do not establish Plaintiff's mood disorder was persistently characterized by at least four of the

6

symptoms listed in subsection A.1 of Listing 12.04. Bruce Snider, M.D., a psychiatrist who treated Plaintiff in late 2009, did not indicate Plaintiff had such symptoms (Tr. 440-48). Nor do records from the Department of Veterans Affairs (VA) indicate that Plaintiff persistently had the symptoms required to satisfy subsection A.1, particularly when he was not abusing cocaine, marijuana, or other drugs. In addition, Michael Hammonds, Ph.D., the State agency psychological consultant who reviewed the record in May 2010, indicated Plaintiff did not have the symptoms required to satisfy the criteria in subsection A.1 of Listing 12.04 (Tr. 948, 951). Ed Ross, Ph.D., another State agency psychological consultant who reviewed the record in July 2010, affirmed Dr. Hammonds' opinion (Tr. 121-22).

The burden is upon Plaintiff to prove disability at Step 3. He has not cited to evidence that he suffered a medically documented persistence of a depressive syndrome characterized by at least four of the criteria in subsection A.1.

Nor has Plaintiff presented sufficient evidence that his impairments resulted in two of the criteria in subsection B of Listing 12.04. Although he and his wife testified in this regard, evidence in the record contradicts their testimony. As thoroughly discussed by the ALJ the record provides substantial evidence to support the ALJ's finding that Plaintiff had only moderate difficulties in maintaining social functioning (Tr. 20, 22-40). Dr. Snider did not indicate Plaintiff had difficulties interacting during their sessions or that Plaintiff otherwise had significant difficulties socializing (Tr. 440-48). VA records also do not establish that Plaintiff had marked difficulties in maintaining social functioning. Plaintiff occasionally expressed anger and frustration at other patients and VA staff, but the VA notes do not indicate Plaintiff had significant difficulties interacting with others, including Katherine Schmidt, M.D., a psychiatrist, and the other medical professionals. The notes by VA personnel provide substantial evidence undermining Plaintiff's contention that he had marked

difficulties in maintaining social functioning.

Finally, although Plaintiff was diagnoses with mood disorders, it is well established that the mere diagnosis of a condition does not satisfy the requirements of a listing. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988).

Plaintiff has not pointed to any evidence which refutes or calls into question these opinions. Nor has Plaintiff pointed to specific medical findings which demonstrates that he satisfies the criteria of Listing 12.04. To the contrary, based upon the objective medical evidence of record, the Court finds that the AL's evaluation of Listing 12.04 is supported by substantial evidence on the record.

Plaintiff's second claim of error is that the ALJ did not properly weigh the medical evidence.

"In order to determine whether the ALJ acted properly in disagreeing with a medical source, we must first determine the medical source's classification," *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir.2010), as "not all medical sources need be treated equally," *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir.2007). The Social Security regulations classify "acceptable medical sources into three types: nonexamining sources, nontreating (but examining) sources, and treating sources." *Id.* at 875. Generally, more weight is given to the medical "opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined [the claimant]." 20 C.F.R. § 404.1527(c)(1); *see also Norris v. Comm'r of Soc. Sec.*, 461 Fed.Appx. 433, 439 (6th Cir.2012) (noting that a nonexamining source's opinion is given less deference than an examining (but not treating) source's opinion, which is given less deference than a treating source). But "[i]n appropriate circumstances, opinions from State

8

agency medical and psychological consultants ... may be entitled to greater weight than the opinions of treating or examining sources." SSR 96–6p, 1996 WL 374180, at *3. One such instance is where the "[s]tate agency medical or psychological consultant's opinion is based on a review of a complete case record that includes a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive information than what was available to the individual's treating source." *Id.* "The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight [the ALJ] will give that opinion." 20 C.F.R. § 404.1527(c)(3). Generally, more weight is given to opinions that are "more consistent ... with the record as a whole," *id.* § 404.1527(c)(4), and opinions of "a specialist about medical issues related to his or her area of specialty." *Id.* § 404.1527(c)(5).

In crying foul, Plaintiff argues that the ALJ should have given greater weight to the opinion of his treating physician, Katherine Schmidt, M.D. In order to be given controlling weight, the opinions of a treating source on issues involving the nature and severity of a claimant's impairments must be well supported by medically acceptable clinical and laboratory diagnostic techniques, and be consistent with other substantial evidence in the case record. 20 C.F.R. § 416.927(d)(2). Such opinions receive great weight only if they are supported by sufficient medical data. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985).

In October of 2011, Dr. Schmidt completed a mental RFC form, in which she noted Plaintiff's diagnosis as bipolar disorder, generalized anxiety disorder, cannabis dependence; cocaine dependence in full, sustained remission and personality disorder with a GAF score of 45, highest being a 50 (Tr. 1166). Dr. Schmidt wrote that Plaintiff "takes his medications and attends his

9

appointments regularly. He has had partial response to medication and therapy but continues to have significant symptoms." *Id.* She opined that Plaintiff was "unable to meet competitive standards in maintain regular attendance and completing a normal workday and workweek without interruptions from psychologically based symptoms (Tr. 1168). Dr. Schmidt further noted that Plaintiff had a "marked" limitation in social functioning and maintaining concentration, persistence and pace (Tr. 1168). He would miss more than four days per month of work (Tr. 1170). She did not opine that substance abuse contributed to Plaintiff's mental impairments (Tr. 1171). In a letter dated March 30, 2102, Dr. Schmidt directly addressed the issue of Plaintiff's marijuana use (Tr. 1323). She wrote that his regular use of marijuana did not contribute significantly to his psychological symptoms or his ability to work. She believed the "bulk of his trouble maintaining gainful employment s attributed to his underlying mood and anxiety diagnosis." *Id.* Dr. Schmidt further noted that marijuana's known biological effects were not consistent with Plaintiff's behavior. She further wrote that even while uses marijuana, Plaintiff has experienced times of less depression were he is able to successfully function (despite cannabis use) until interpersonal issues arise, which suggest his symptoms are better accounted for by his mood disorder (Tr. 1323).

In rejecting Dr. Schmidt's pinion of extreme functional limitation, the ALJ noted that her report was devoid of objective medical findings. This alone is a sufficient basis upon which the ALJ may properly discount an opinion from a treating source. In addition, the record establishes that although Plaintiff received inpatient treatment for his drug abuse, Plaintiff's treatment from his mental condition absent his drug abuse generally was conservative in nature, including his treatment from Dr. Schmidt. Plaintiff's conservative treatment further undermines the extreme limitations Dr. Schmidt included in her opinions. Dr. Schmidt may have relied on Plaintiff's allegations regarding the effects of his mental condition on his ability to work, but a claimant's subjective complaints are

10

not a sufficient basis for an opinion. 20 C.F.R. § 404.1527( c). The ALJ also properly considered other evidence undermining Plaintiff's allegations of disabling limitations, evidence that also further undermines Dr. Schmidt's opinions, including Plaintiff's work after his alleged onset date of November 16, 2007.

Given the lack of supporting evidence, the Court finds no error in the ALJ's discounting of Dr. Schmidt's opinion.

### III. CONCLUSION

The Court finds that the ALJ's decision is supported by substantial evidence on the record. Accordingly, it is **HEREBY ORDERED** that the Plaintiff's Motion for Summary Judgment be **OVERRULED** and the Defendant's Motion for Summary Judgment be **SUSTAINED**. A judgment in favor of the Defendant will be entered contemporaneously herewith.

This 24th day of March, 2015.



Signed By:
*Henry R. Wilhoit, Jr.*
United States District Judge

Henry R. Wilhoit, Jr., Senior Judge